(No. 21849.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES VARECHA, Plaintiff in Error.

*Opinion filed June 22, 1933.*

DARROW, SMITH, CRONSON & SMITH, (WILLIAM W. SMITH, and EDWARD M. KEATING, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

James Varecha was indicted in the criminal court of Cook county for the murder of Frank F. Jordan. He entered a plea of not guilty, but withdrew it and substituted a plea of guilty. The court warned him of the consequences, but he persisted in the latter plea. Evidence of facts in aggravation and in mitigation of the offense was heard, after which judgment was entered and sentence of death pronounced. Varecha prosecutes this writ of error.

The plaintiff in error is seventeen years of age and a son of Charles and Anna Varecha, who reside at 2054 West Fifty-second street, Chicago. On the evening of November 16, 1932, at about 9:30 o'clock, Frank F. Jordan and Emma Dahnke were sitting in the front seat of an automobile on the east side of Lincoln street about ten feet north of Sixty-fourth street, in Chicago. A young man,

subsequently identified as the plaintiff in error, approached from the rear, opened the door of the automobile on the side where Miss Dahnke was seated and said, "This is a stick-up; put up your hands." Miss Dahnke started to give the plaintiff in error her purse. Jordan, about the same time, said "Oh no," and manifesting resistance, the plaintiff in error shot him. The bullet struck Jordan about two inches below the top of the right shoulder, passed through the body and emerged below the left shoulder blade. Jordan alighted from the automobile and started to go around it but fell to the pavement. Miss Dahnke screamed and the plaintiff in error fled through a passageway between two buildings and disappeared. William E. Grund, a police officer, who resided in the neighborhood, ran first to the street and then toward an alley to capture the assailant. Failing to discover him, Grund returned immediately to Jordan and the police patrol wagon was summoned. Jordan died while lying in the street.

The plaintiff in error was arrested three days after the homicide in a moving picture theater in Chicago. The next day, in the presence of five police officers, two assistant State's attorneys and a physician associated with the behavior clinic of the criminal court of Cook county, he signed a written statement in which he confessed that he shot Jordan. He claimed, however, that he intended only to shoot him in the shoulder, but that, as he fired, Miss Dahnke raised her purse and struck his arm and, consequently, the course of the bullet was changed and the mortal wound was inflicted.

Prior to the present indictment, a petition was filed in the juvenile court of Cook county in which it was alleged that the plaintiff in error was under the age of seventeen years; that by reason of a charge of robbery laid against him he was a delinquent child and a hearing upon the petition was requested. This petition was dismissed. Subsequently a proceeding was instituted in the same court to

have the plaintiff in error declared a feeble-minded person. After evidence was heard, the court, on December 21, 1931, adjudged him such a person and ordered him committed to the State Hospital for the feeble-minded and epileptic at Dixon. In the order it was recited, "and the court hereby retains jurisdiction of this cause for the purpose of making such further or other orders herein for the welfare of said person as may from time to time be found to be in accordance with equity and in accordance with the statute in such case made and provided." Later the plaintiff in error escaped from the State Hospital at Dixon.

On November 23, 1932, when the plaintiff in error was arraigned, he entered a plea of not guilty. His attorney stated that he expected to have the aid of psychiatrists who were not then present but would be available within two or three weeks, and that he wished to reserve the right to withdraw the plea of not guilty and substitute a plea of guilty. The court asked Dr. Harry R. Hoffman of the behavior clinic, who was present, whether he had examined the plaintiff in error. The doctor answered that he had an opinion respecting his sanity, but that he had made no psychological tests. The judge replied that he was informed the plaintiff in error had been in an institution. Dr. Hoffman rejoined, "Nothing definite. I am informed he has been in Dixon." The court inquired whether that institution was for the feeble-minded, and Dr. Hoffman answered that it was for the feeble-minded and the epileptic. The court then directed Dr. Hoffman to make an examination of the plaintiff in error and asked when he could present a complete report. The doctor replied it would require a minimum period of two weeks. The court also authorized Dr. Orlando Scott, a psychiatrist for the defense, to examine the plaintiff in error out of the presence of representatives of the State. On December 7, 1932, the time fixed to receive Dr. Hoffman's report, the attorney for the plaintiff in error stated to the court that after reading the

report and conferring with the members of the family of the plaintiff in error, they had decided to withdraw the plea of not guilty. The court asked whether the plaintiff in error understood the proceeding. The attorney answered that he did and that he intended to plead guilty. The court, after warning the plaintiff in error of the consequences of such a plea, allowed him to plead guilty to the charge in the indictment.

Some time after the sentence of death was pronounced the attorney who appeared for the plaintiff in error in the trial court filed a petition to vacate the judgment and sentence. The petitioner alleged that because of his ignorance of the facts and the law he improperly advised the plaintiff in error to enter a plea of guilty and that the latter, acting upon his advice, entered such a plea under a misapprehension. The petition was denied. Thereafter a second petition to vacate the judgment and sentence was filed by an attorney not connected with the case at the time the plea of guilty was entered. This petition disclosed that, after the plaintiff in error had been indicted in the criminal court for robbery, the juvenile court, upon a transfer of the cause from the criminal court, took jurisdiction of his person. In support of this petition, an affidavit by the attorney who represented the plaintiff in error upon the entry of the plea of guilty was filed. The attorney, after setting forth the commitment of the plaintiff in error to the Dixon State Hospital and his escape therefrom, averred that he was not aware a plea of guilty could admit the capacity of the plaintiff in error to commit the crime whereof he was charged; that he was not familiar with the law in relation to feeble-minded persons; that he did not know the legal effect of the adjudication of the juvenile court, and that because of his ignorance and inexperience he advised the entry of a plea of guilty when, in view of the decree of the juvenile court, he should have pleaded the want of jurisdiction of the criminal court. This petition was also denied.

It is contended that the trial court erred in not vacating the judgment and sentence upon the disclosure that the juvenile court had adjudged the plaintiff in error a feeble-minded person and retained jurisdiction over him and that the decree was in force when his plea of guilty in the present case was entered.

Section 4 of division 13 of the Criminal Code requires that before a plea of guilty may be entered, the court shall fully explain to the person accused the consequences of entering such a plea. (Cahill's Stat. 1931, p. 1089; Smith's Stat. 1931, pp. 1092, 1093). A plea of guilty should be entered only when the person making it is of competent understanding and has been fully informed respecting the consequences of the plea. (*Gardner* v. *People,* 106 Ill. 76; *People* v. *Carzoli,* 340 id. 587; 2 Bishop's New Crim. Proc. (2d ed.) sec. 795). The plea would be of no effect if the explanation required by the foregoing section were not first made, and an explanation or warning could be of no force unless the person accused were mentally competent to understand it. A plea of not guilty would not necessarily admit the mental competency of the person entering it, and would be consistent with a contrary contention, while a plea of guilty is inconsistent with mental incompetency, especially as it is defined in the statute under which the plaintiff in error was adjudged to be feeble-minded. The statutory definition is: "Any person afflicted with mental defectiveness from birth or from an early age, so pronounced that he is incapable of managing himself and his affairs, or of being taught to do so, and requires supervision, control and care for his own welfare, or for the welfare of others, or for the welfare of the community." (Cahill's Stat. 1931, p. 270; Smith's Stat. 1931, p. 311). This definition, though slightly different from the statutory definition of insanity (Cahill's Stat. 1931, p. 1814; Smith's Stat. 1931, p. 1851), is predicated upon mental incompetency. A person who is incapable of discerning right from wrong as to

the particular act in question or incapable of choosing either to do or not to do the act and of governing his conduct in accordance with such choice, is insane. (*People* v. *Geary,* 298 Ill. 236; *People* v. *Lowhone,* 292 id. 32). The same general rules of law applicable to an insane person in respect to his mental competency would apply to a feeble-minded person where the mental defect amounts to the same lack of capacity. 1 Brill's Cyclopedia of Crim. Law, sec. 116; *Travers* v. *United States,* 6 App. Cas. 450; 1 Hale's P. C. pp. 29, 30; 2 Sharswood's Blackstone's Com. book 4, *p. 24.

As a general rule where insanity or mental incompetency is proved as existing at a particular period, it will be presumed to continue until disproved. The rule is subject to the qualifications that the insanity or mental incompetency must be of a permanent type or of a continuing nature, and that too long a period of time must not be shown to have elapsed between the proved insanity or mental incompetency and the crime charged against the accused. (*Langdon* v. *People,* 133 Ill. 382, p. 405; *People* v. *Maynard,* 347 id. 422; 2 Bishop's New Crim. Proc. sec. 674; 1 Wharton's Crim. Law, (12th ed.) sec. 81; *In re Brown,* 4 Ann. Cas. (Wash.) 488, and note 491). Mental defectiveness so pronounced that one is incapable of being taught to manage himself or his affairs is mental incompetency of a continuing nature.

In the proceeding in the juvenile court in which the plaintiff in error was adjudged a feeble-minded person, that court under sections 3, 7, 9 and 21 of the act relating to the care and detention of feeble-minded persons, (Cahill's Stat. 1931, pp. 270, 271, 273; Smith's Stat. 1931, pp. 311, 312, 313 and 315) had jurisdiction of the person of the plaintiff in error and the power to enter the decree. Section 9 of that act provides that a decree entered finding a person feeble-minded "shall stand and continue binding upon all persons whom it may concern until rescinded or otherwise

regularly superseded or set aside." The obvious purpose of this section is that, once there is a judicial determination by a court vested with the power that a person is feeble-minded, the decree continues in force until it is superseded or set aside in a judicial proceeding.

The only evidence offered to overcome the decree of the juvenile court that the plaintiff in error was mentally incompetent when the plea of guilty was entered, was an unsworn report of a physician, made at the direction of the court, with no opportunity afforded to examine witnesses upon it, and it was not introduced in a proceeding to set aside the decree of the juvenile court. There is no provision in the Criminal Code that upon a plea of guilty by an accused person who has been adjudicated to be feeble-minded by a court of record, an unsworn report may rescind the decree. The decree of the juvenile court in the exercise of its special jurisdiction is as conclusive as that of any other court. 2 Freeman on Judgments, (5th ed.) sec. 659.

The escape of the plaintiff in error from the Dixon State Hospital did not terminate that institution's control over him conferred by the decree of the juvenile court. The statute provides that when an escaped person is found, it shall be the duty of the superintendent, and his assistants, and of any sheriff, constable or other peace officer in any county in which he may be found to take and detain him without a warrant, and report his re-capture or arrest to the county judge of the county who shall return him to the institution at the cost of the county from which he was admitted. Cahill's Stat. 1931, p. 274; Smith's Stat. 1931, p. 315.

It was not properly shown when the plea of guilty was entered that the plaintiff in error was mentally competent to enter it. Evidence in aggravation and in mitigation of the offense, in part, related to the mental competency of the plaintiff in error, but the determination of the question

of his mental competency could not be postponed to a time subsequent to the entry of the plea, and permit evidence then introduced to relate back to render the plea of guilty valid. The plea should be legally sufficient when made. Moreover, the plea of guilty, in its effect was not unconditional, but was made upon the assurance to the plaintiff in error by his attorney that the death penalty would not be inflicted.

The law seeks no unfair advantage over an accused person but is watchful to see that the proceedings in which his life or liberty is at stake shall be fairly and impartially conducted. (*People* v. *Bonheim*, 307 Ill. 316; *People* v. *Kleist*, 311 id. 179; *People* v. *Kurant*, 331 id. 470). The showing made by the second petition was sufficient to require the vacation of the judgment and sentence entered by the criminal court.

The judgment of the criminal court is reversed and the cause is remanded to that court.

*Reversed and remanded.*