(No. 30626.—

THE PEOPLE *ex rel.* Manuel M. Wiseman, on behalf of Charles Stewart Willis, Petitioner, *vs.* WALTER NIERSTHEIMER, Warden, Respondent.

*Opinion filed September 24, 1948—Rehearing denied Nov. 11, 1948.*

MANUEL M. WISEMAN, of Alton, *pro se,* relator.

GEORGE F. BARRETT, Attorney General, of Springfield, (WILLIAM C. WINES, and JAMES C. MURRAY, both of Chicago, of counsel,) for respondent.

Mr. JUSTICE WILSON delivered the opinion of the court:

By an original petition for a writ of *habeas corpus* filed in this court against Walter Nierstheimer, warden of the Illinois State Penitentiary at Menard, Manuel M. Wiseman, on behalf of Charles Stewart Willis, sought to obtain

Willis's discharge from the penitentiary. The writ issued, the warden made a return, and a traverse in the nature of a demurrer was filed on behalf of Willis. The cause is submitted upon the record thus made.

From the petition and the warden's return to the writ, the following facts appear: On April 8, 1932, Charles Stewart Willis, then fifteen years of age, was adjudged feeble-minded by a decree of the county court of Jersey County and ordered committed to the Lincoln State School and Colony, at Lincoln, to remain in this institution under its supervision, custody, control and care, as provided by statute and in accordance with the rules of the institution, until further order of the court or until released therefrom by operation of law. The decree recites that the county court retains jurisdiction of the cause for the purpose of making such further or other orders for the welfare of Willis as may from time to time be found to be in accordance with the applicable statute. Willis was delivered to the superintendent of the Lincoln State School and Colony the following day, namely, April 9. Two days later, on April 11, the judge of the county court wrote a letter to the managing officer of the institution at Lincoln saying, "Chas. Willis was placed in your Institution on April 9, 1932, and from information received from Mr. S. P. Wright, State Visitor, and Miss Edna Zimmerman, Superintendent of Child Welfare, I am of the opinion that the place they have chosen at Decatur would be a more consistent place according to the Psychologist's report from the institute for Juvenile Research in Chicago. I have, therefore, this day rescinded the former order of commitment to your Institution and, if agreeable with you, I hereby order Mr. Wright to transfer this boy from your Institution to the Decatur Boys' Home as arranged by said Miss Edna Zimmerman." So far as the records of the county court of Jersey County disclose, the order of commitment entered on April 8, 1932, has never been rescinded, revoked

or set aside. The only evidence tending to show whether the commitment was rescinded, revoked, or set aside is the letter dated April 11, 1932, signed by the county judge and directed to the managing officer of the Lincoln State School and Colony.

Pursuant to the letter described, Willis was taken from the custody of the Lincoln State School and Colony and delivered to the Boys' Opportunity Home at Decatur. Willis was returned to Jersey County on August 19, 1932, where he remained in a foster home financed by his foster mother. Subsequently, he left this home and went to Morgan County.

Two indictments returned in the circuit court of Morgan County on February 13, 1933, charged Willis with the murder of John Rapp and Harry L. Myers on December 28, 1932, by displacing a railroad track switch of the Wabash Railway Company. Willis, then sixteen years of age, on March 13, 1933, represented by counsel, waived a trial by jury, pleaded guilty to each indictment and, after admonition as to his right and the consequences of his pleas of guilty, persisted in them. The pleas were accepted and defendant found guilty of murder in the manner and form as charged in the indictments. The attorney for Willis then made a motion in each cause seeking permission to offer testimony in mitigation of the sentence and of extenuating circumstances. The motions were allowed and the causes continued. By agreement of the parties, the trial judge appointed a commission to examine and report on the mental condition and intelligence of Willis. On April 13, 1933, defendant, by his attorney, offered evidence in mitigation of punishment and, after all the evidence for and against mitigation of punishment was heard, the cause was taken under advisement. The report of the commission and, also, the report of Dr. Paul L. Schroeder, State criminologist, on the mental condition of Willis, were filed on the day last named. The report of the commission dated

March 14, 1933, signed by Dr. Frank P. Norbury, medical director of the Norbury Sanitorium, Jacksonville, Dr. Joseph Marcovitch and Dr. Samuel N. Clark, states that Willis was examined on the day named; that the examination consisted of a complete examination of the bodily condition, including an investigation of the nervous system, also a determination of the degree of intelligence possessed by Willis, with consideration given to the question of whether any intercurrent mental disorder (psychosis) existed; that nothing was brought out in the physical examination to indicate any bodily disease which would interfere with the mental processes and that, in the neurological examination, nothing was found suggesting the presence of an organic involvement of the brain. The commission reported, further, that Willis was oriented; that he had a fair grasp of the immediate aspects of the situation, and no delusions, sense falsifications or emotional disturbance were indicated during the examination; that Willis spoke of having passed through two spells for which he had no memory; that it was demonstrated to one of the three examiners who saw him during one of the spells that he did know what he was doing at the time, although the spell evidently represented a period of emotional disturbance; that it was the considered judgment of the three members of the commission that neither of the two spells could be said to have indicated a period of insanity nor a period of unconsciousness, and that the points mentioned led to the conclusion that Willis was not suffering from insanity. The commission stated that Willis was given a group intelligence test, commonly known as "The Stanford Revision of the Binet-Simon Tests," representing what is generally considered the most reliable group of tests employed for the purpose of determining whether intelligence is normal or retarded; that they found Willis graded twelve years which would give an intelligence quotient of 75; that the intelligence quotient is derived by dividing

the mental age, as determined by the tests, by the actual age; that an intelligence quotient of 70 is ordinarily given as the dividing line between feeble-mindedness and those above this level; that "One has to add that one cannot say that there is a sharply dividing line, and the figure given should be considered as simply a convenient approximation;" that, besides the intelligence quotient, the social behavior of the individual has to be considered; that, according to the behavior, one may say that some border-line cases need not be committed but may continue to live in the community at large, whereas, with asocial behavior added to a borderline condition, one feels the case is commitable; that Willis indicated a number of incidents "already known to the Court," indicating that he was anti-social or asocial, and that, with the emotional instability which had been brought out on some provocation and the low intelligence, rendered him a distinct menace to society. The commission concluded its report, "We feel that Charles Willis is a border line feeble-minded individual, who more than many other cases of low intelligence admits behavior which indicates the need for removing him from the community at large, and therefore our conclusions are that the said Charles Willis is a subject for permanent custodial care."

Paul L. Schroeder, State Criminologist, wrote a long letter, dated April 5, 1933, to the judge of the circuit court of Morgan County certifying that he had examined Willis on the day named; that he was then in full contact with his surroundings, oriented in all spheres, discussed readily and freely the charge against him, recognized the seriousness of the offense, and understood the consequences of the punishment which might be meted out to him; that there was evident, however, a failure to react adequately to this knowledge, failure to appreciate fully his situation in view of the possibility of punishment; that, in discussing his previous life, Willis admitted he had put fire to a barn

on the home of his foster mother when eight years of age; that, two years later, he lighted a garage in the city of Jerseyville; that, while at a children's home in Decatur, he cut his wrist with a razor blade, the scar of which was evident; that, while at the Soldiers' Home in Normal, he experienced a fainting attack following a disagreement with an older boy but remembered nothing of this, although examined at the time; that each of these instances was followed by intense desire for excitement, and that, after each of them, he had a feeling of relaxation, of well-being, and a subsequent horror at the damage which he had done. Dr. Schoeder added that Willis readily discussed the throwing of the switch resulting in the train wreck and death, stating that he felt compulsion to throw the switch; that at first he decided not to do it because, he said, "I realized I might be pinched for fooling with a railroad switch," but stated he realized that unless he did throw the switch he would not know what would happen. It is stated that he apparently understood his failure to become associated in a more normal way with other children. The report of the criminologist says that sex indulgence had, since thirteen years of age, played a large part in his life. The report adds that Willis was first examined on March 25, 1932, again on July 25, 1932, and in August, 1932; that each of these examinations pointed to an intelligence level in the lower portion of the group of normal children with a mental age ranging between twelve years, two months, and twelve years, eight months; that the report of the examination in March observed, "The contributing causes to the delinquency are the feelings of inadequacy and inferiority due to being an orphan, unpleasant physical appearance, failing in school and being too restricted and under too close supervision and care by the foster mother, the result being a desire to compensate which has expressed itself by doing startling things which are undoubtedly bids for attention. It is imperative that this boy be removed

immediately from the community of Jerseyville." The report in August, according to the criminologist, said, "Because there is some question as to the delinquency on the one hand and mental illness on the other, our recommendations need to take into consideration the possibilities of difficulties wherever he is placed. Our earlier recommendations tend to suggest training in a school such as the St. Charles School for Boys. We should like to suggest that in the event that this placement is administratively impossible to make from the county that you consider his commitment to a State hospital such as the Alton State Hospital. With a history of an acute mental up-set at the Children's Home of Normal suggestive of hysteria with a loss of consciousness and violence, commitment to a State hospital is not out of keeping with the findings." Schroeder's report concludes, "Although it is impossible at this time to make a diagnosis which clearly describes this boy's behavior, it seems evident on the face of his earlier delinquencies, reaction in several situations, his lack of feeling, that deviation from the normal exists. He must, however, be considered a serious menace to the community and institutionalization clearly indicated. This institutionalization should provide not only thorough and complete incarceration but facilities for the further study of the causes of his acts and the possibilities of treatment."

On April 14, Willis again appeared in court with his attorney and the record discloses he was again arraigned and, for a second time, pleaded guilty to the crimes charged in each indictment and, having been admonished as to the effect of his plea of guilty in each cause, persisted in the pleas. The pleas were accepted, and Willis was found guilty of the murder of John Rapp and Harry L. Myers, as charged, and the court, having heard the evidence offered in mitigation of punishment, sentenced Willis to imprisonment for life for each crime. In a "Statement of Fact," dated April 18, 1933, signed by the presiding judge and

the State's attorney, the details of the crime are described. The statement says the pleas of guilty interposed to both indictments for murder were accepted upon the express understanding and agreement between counsel for Willis and the State's Attorney that the court should appoint a commission of competent physicians to examine Willis as to his mental and physical condition and make a report of their findings; that the court also, on its own motion, by consent of counsel, requested Dr. Paul L. Schroeder, State Criminologist, to examine Willis and report his findings. The reports of the commission and of the criminologist are set forth *verbatim*. The statement of the trial judge and the State's attorney continues that, as a baby, Willis was adjudged a dependent child and, later, taken from an institution to the home of his foster mother, but was not adopted; that his foster mother's family, including Willis, resided in Jacksonville several years where the boy was known as a destructive child; that the family later moved to a farm near Kane where Willis set fire to and burned a barn on the farm; that, later, they moved to Jerseyville where he set fire to the Farmers Elevator and, while the firemen were fighting this fire, he ran two blocks away and set fire to a building; that he also set fire to a livery stable and a feed mill in Jerseyville; that, for these acts of arson, he was adjudged by the county court of Jersey County to be feeble-minded and committed to the Lincoln State School and Colony where he was given an examination for feeble-mindedness, found not to be feeble-minded and, after two days' confinement, was taken to the Boys' Opportunity Home, in Decatur, on April 11, 1932; that his behavior at the Opportunity Home was such that the man in charge of the Home refused to keep him any longer and he left the institution on July 13, 1932; that he was taken to the Soldiers' Orphans' Home at Normal for a short period of time and then returned to his foster mother, who, with Willis, resided at Pittsfield at the time of the

commission of the crimes of murder. The statement concludes, "The defendant's conduct throughout his life, together with his family historical background, clearly indicates that the defendant is suffering from some mental defect which created in him an irresistible impulse to commit crime. This is fully manifested by his conduct through his entire life. It is the opinion of the Court, as well as the State's Attorney, that the defendant is a serious menace to society which requires his complete incarceration but that he should be kept under close observation and subjected to periodical examination, both mentally and physically, and such treatment afforded him as may be deemed necessary and proper in order that his physical and mental maladjustment may ultimately be cured if possible. It is known that the mother of this boy is a borderline mental case; * * *"

Willis has been confined since April 23, 1933. The petition for *habeas corpus* alleges that, at the time the crimes of murder charged in the indictments returned against him, namely, December 28, 1932, were perpetrated, he was a feeble-minded person, and in need of proper supervision, control, care and support; that, at the trials in 1933, he was a feeble-minded person and under the jurisdiction of the county court of Jersey County; that because he was, both at the time of the alleged offenses and at the time of the trials, a feeble-minded person and under the jurisdiction of the county court of Jersey County, the circuit court of Morgan County had no jurisdiction of the person charged by the indictments for murder, but was wholly without jurisdiction of the person of Willis; that, because of the lack of jurisdiction, the purported judgments, sentences and the *mittimi* issued by the clerk of the circuit court of Morgan County, were void, illegal and unauthorized, and the commitment and detention of Willis by virtue of the *mittimi* void, illegal and without authority of law.

The return of the warden of the Illinois State Penitentiary, Menard Branch, to the writ of *habeas corpus*

denies that Willis is entitled to be discharged from custody on any or all of the grounds alleged in his petition; that, if it is the contention of Willis that he was *non compos mentis* at the time he entered his pleas, was tried and convicted of the crimes of murder in the circuit court of Morgan County, and such fact was unknown to the trial court, his remedy is not by way of *habeas corpus* but is by a petition in the nature of a writ of error *coram nobis* to the trial court, in accordance with our recent decision in *Schroers* v. *People*, 399 Ill. 428.

Section 22 of the Habeas Corpus Act (Ill. Rev. Stat. 1947, chap. 65, par. 22,) so far as relevant, provides: "If it appear that the prisoner is in custody by virtue of process from any court legally constituted, he can be discharged only for some of the following causes: (1) Where the court has exceeded the limit of its jurisdiction, either as to the matter, place, sum or person." The basic contention of petitioner is that Willis, on December 28, 1932, the day John Rapp and Harry L. Myers were murdered, and at the time of the trials in the circuit court of Morgan County in the spring of 1933, was a feeble-minded person and under the exclusive jurisdiction of the county court of Jersey County and that, consequently, the circuit court of Morgan County was without jurisdiction of his person. From these premises, petitioner contends that the judgments, sentences and *mittimi* in the two causes were void and have never constituted, and do not now constitute, any legal authority for the confinement, imprisonment or detention of Willis.

Respondent maintains that the only question properly presented for our decision is whether the decree of the county court of Jersey County declaring Willis feeble-minded was so conclusively and perpetually an adjudication of his mental incapacity as to deprive the circuit court of Morgan County of jurisdiction of the person of Willis.

The argument advanced is that, since this court does not try issues of fact and, in consequence, cannot and will not try the issue of fact as to the actual mental capacity of Willis at the time of his pleas of guilty to the charges of murder in 1933, the sole inquiry open for disposition is the effect of the adjudication of feeble-mindedness. Respondent's position is, in short, that the adjudication by the county court of Jersey County to the effect Willis was feeble-minded was not conclusive upon his mental capacity thereafter to plead guilty to murder and therefore did not oust the circuit court of Morgan County of jurisdiction. The substance of the argment is that the question of the mental capacity of Willis to plead guilty to the two indictments for murder was one of fact and that the decree of the county court of Jersey County adjudging him a feeble-minded person, although admissible in evidence, was not conclusive upon the issue of mental capacity and did not defeat the jurisdiction of the circuit court of Morgan County.

The rule is firmly established that the writ of *habeas corpus* may not be used as a writ of error to review a judgment which may be erroneous but is not void. Nor does the fact that a judgment of conviction by a court having jurisdiction could have been reversed on writ of error necessarily justify resorting to a writ of *habeas corpus* for the discharge of a convicted person. (*People ex rel. Ross v. Becker,* 382 Ill. 404.) A court has jurisdiction of a *habeas corpus* proceeding only where the original judgment of conviction was void or where something has happened since its rendition to entitle the prisoner to his release. (*People ex rel. Courtney v. Fardy,* 378 Ill. 501.) In the recent case of *People ex rel. Swolley v. Ragen,* 390 Ill. 106, we said, "It is well settled that the writ of *habeas corpus* cannot be permitted to take the place of a writ of error for the purpose of reviewing errors of a court having jurisdic-

tion of the person and subject matter. If a court has jurisdiction, in a criminal case, of the person and of the subject matter, the question whether errors or irregularities have occurred in the exercise of the jurisdiction can only be determined upon a writ of error." The circuit court of Morgan County had jurisdiction of the subject matter, namely, of the crimes of murder charged to have been committed by Willis. The controlling question remains as to whether the circuit court also had jurisdiction of the person of Willis.

*People* v. *Varecha,* 353 Ill. 52, is relied upon by Willis as decisive of his contention. In the case cited, Varecha, prior to his indictment in the criminal court of Cook county for murder, namely, on December 31, 1931, had been adjudged a feeble-minded person by the Juvenile court of Cook County and ordered committed to the State Hospital for the feeble-minded and epileptic at Dixon. The order recited, in part, "and the court hereby retains jurisdiction of this cause for the purpose of making such further or other orders herein 'for the welfare of said person as may from time to time be found to be in accordance with equity and in accordance with the statute in such case made and provided." The only difference between the orders in the *Varecha case* and in the *Willis case* is that the former order contains the words "in accordance with equity and," an immaterial difference. Varecha escaped from the State Hospital at Dixon. The order declaring him feeble-minded was entered December 21, 1931, and he was charged with having committed murder on November 16, 1932. In the present case, Willis was found feeble-minded on April 8, 1932, and was indicted for the murders charged to have been committed on December 28, 1932. Varecha was under seventeen years of age when adjudged feeble-minded; Willis was fifteen years of age when declared feeble-minded. The trial judge in the *Varecha case* denied a petition to vacate a judgment and sentence of death entered upon the

defendant's plea of guilty, the petition disclosing, as previously recounted, that, prior to the perpetration of the murder charged, the juvenile court of Cook County, conformably to the act relating to the care and detention of feeble-minded persons, adjudged Varecha feeble-minded and committed him to the Dixon State Hospital from which he later escaped. Section 9 of the applicable statute provided that a decree finding a person feeble-minded "shall stand and continue binding upon all persons whom it may concern until rescinded or otherwise regularly superseded or set aside." (Ill. Rev. Stat. 1947, chap. 23, par. 354.) Construing the quoted provision, this court said, "The obvious purpose of this section is that, once there is a judicial determination by a court vested with the power that a person is feeble-minded, the decree continues in force until it is superseded or set aside in a judicial proceeding." The decree of the county court of Jersey County, so far as the pleadings disclose, is still in force and has not been set aside in a judicial proceeding. Indeed, respondent says, "This order appears never to have been vacated." It is true that the judge of the county court, who entered the order, two days later wrote a letter assuming to authorize the transfer of Willis to the Decatur Boys' Home. This document, irrespective of its caption, was not an order of the county court rescinding the decree of April 8, 1932.

In the present case, as in the *Varecha case,* the defendant pleaded guilty and the record discloses that the effect and consequences of entering pleas of guilty were fully explained to him. A plea of guilty, however, should be entered only when the person making it is of competent understanding and has been fully informed respecting the consequences of the plea. In the *Varecha case,* the court observed that the plea would be of no effect if the explanation required by section 4 of division XIII of the Criminal Code (Ill. Rev. Stat. 1947, chap. 38, par. 732,) were not first made, "and an explanation of warning could be of

no force unless the person accused were mentally competent to understand it."

The statutory definition of feeble-mindedness is, "any person afflicted with mental defectiveness from birth or from an early age, so pronounced that he is incapable of managing himself and his affairs, or of being taught to do so, and requires supervision, control and care for his own welfare, or for the welfare of others, or for the welfare of the community." (Ill. Rev. Stat. 1947, chap. 23, par. 346.) This definition, differing but slightly from the statutory definition of insanity, (Ill. Rev. Stat. 1947, chap. 91½, par. 1-6,) is predicated upon mental incompetency. A person who is incapable of discerning right from wrong as to the particular act in question, or incapable of choosing to do or not to do the act, and governing his conduct in accordance with such choice, is insane. The same general rules of law applicable to an insane person with respect to his mental competency apply to a feeble-minded person where the mental defect amounts to the same lack of capacity. (*People* v. *Varecha,* 353 Ill. 52, and authorities cited.) Where insanity or mental incompetency is proved as existing at a particular period,—here, on April 8, 1932,— the presumption obtains that it continues until disproved, provided, however, that the insanity or mental incompetency is of a permanent type or of a continuing nature, but, to avoid criminal responsibility, too long a period of time must not be shown to have elapsed between the proved insanity or mental incompetency and the crime charged against the accused. (*People* v. *Varecha,* 353 Ill. 52; *People* v. *Maynard,* 347 Ill. 422.

Applying the foregoing rules to the factual situation presented, this court in the *Varecha case* said, "The only evidence offered to overcome the decree of the juvenile court that the plaintiff in error was mentally incompetent when the plea of guilty was entered, was an unsworn report of a physician, made at the direction of the court,

with no opportunity afforded to examine witnesses upon it, and it was not introduced in a proceeding to set aside the decree of the juvenile court. There is no provision in the Criminal Code that upon a plea of guilty by an accused person who has been adjudicated to be feeble-minded by a court of record, an unsworn report may rescind the decree. * * * The escape of the plaintiff in error from the Dixon State Hospital did not terminate that institution's control over him conferred by the decree of the juvenile court. * * * It was not properly shown when the plea of guilty was entered that the plaintiff in error was mentally competent to enter it. Evidence in aggravation and in mitigation of the offense, in part, related to the mental competency of the plaintiff in error, but the determination of the question of his mental competency could not be postponed to a time subsequent to the entry of the plea, and permit evidence then introduced to relate back to render the plea of guilty valid. The plea should be legally sufficient when made."

In the case at bar, the pleadings disclose that an unsworn report of a commission consisting of three physicians, made at the direction of the court, and, also, an unsworn report of the State criminologist, made at the direction of the court and with the consent of the prosecution and Willis's attorney, were offered, presumably, to overcome the decree of the county court that Willis was mentally defective when the pleas were entered. These unsworn reports were insufficient to rescind or otherwise supersede or set aside the decree of the county court. The fact that Willis was released after only two days in custody at the Lincoln State School and Colony did not terminate the control of that institution over him conferred by the decree of the county court of April 8, 1932. It follows, necessarily, that since Willis's mental incompetency was of a permanent type or of a continuing nature and that a relatively short period of time had elapsed between his proved

mental incompetency or mental defectiveness and the crimes charged against him, the presumption of feeble-mindedness or mental incompetence was not disproved when the pleas of guilty were entered.

Another leading case is *People* v. *Maynard,* 347 Ill. 422. The defendant, in the case cited, was charged with murder, tried, found guilty, and sentenced to death. His defense was insanity. Upon review, one of the errors assigned was the denial by the trial court of a petition for appointment of a guardian *ad litem* for the accused upon the ground that he had been adjudged insane in the county court of Cook County prior to the day of the offense charged in the indictment. No record of his restoration in the county court existed. Reversing the judgment of conviction upon a writ of error prosecuted by defendant and remanding the cause for a new trial because the issue of the sanity of the accused had not been determined before he was placed on trial, this court said, "The petition here averred that plaintiff in error had been regularly adjudged insane. The general rule is that where insanity is proved as existing at a particular time it will be presumed to continue until disproved. [Citations.] As pointed out in *Langdon* v. *People,* [133 Ill. 382,] there are certain qualifications to this rule, one of which is that the insanity shown to have existed prior to the commission of the act must be of a permanent type or continuing nature. It is not sufficient that there be proof of temporary or spasmodic mania. * * * Another qualification of the rule is that too long a period of time must not be shown to have elapsed between the proved insanity and the act of crime charged against the prisoner. [Citation.] * * * Whether the presumption arising out of the adjudication of insanity in the case of plaintiff in error has been overcome was a question of fact requiring evidence, and though there has been a lapse of nearly ten years since he was adjudged insane, which tends to materially weaken that presumption,

no authority of which we are advised holds that in the absence of proof of facts lapse of time is alone sufficient to remove the presumption. Indeed, it is a matter of common knowledge that insanity is often permanent." We are at a loss to understand the reason for the respondent's brief, referring to the *Maynard case,* saying, "That case, recognized by this court as authority in the *Varecha case,* affirmed a judgment of the criminal court of Cook county notwithstanding the fact that the defendant had been adjudicated insane by an order committing him to the Elgin State Hospital for the insane and had never been restored to sanity. (See 347 Illinois, p. 424.) Affirmance would have been impossible if former adjudication of insanity had been deemed of such force as to defeat the trial court's jurisdiction."

In a recent case (*Jablonski* v. *People,* 330 Ill. App. 422,) Casimer Jablonski instituted a proceeding in the criminal court of Cook County in the nature of a writ of error *coram nobis* to set aside his conviction of armed robbery. His petition, filed on February 13, 1946, by his "sister and next friend," alleged that, on December 7, 1928, the municipal court of Chicago decreed him to be a feeble-minded person, ordered him committed to a colony for feeble-minded persons to which he was admitted on December 14, 1928; that, on June 15, 1929, he escaped and that, on December 28, 1931, he was arrested, and thereafter indicted and tried for robbery while armed; that, on the day last named, he had not, and has never, been judicially restored to reason; that, when he pleaded to the indictment, he was incapable of mentally doing so, and that his disability was not called to the attention of the court. Considering the issue made by the motion of the People to dismiss, namely, whether Jablonski's motion stated sufficient facts from which a *prima facie* right to the relief sought could be inferred, the Appellate Court answered, "We believe the petition sufficiently alleged that defend-

ant was feeble-minded at the time of the trial. The Municipal Court of Chicago had jurisdiction to enter the decree. [Citation.] Its decree was as conclusive and binding as that of any other court. (*People* v. *Varecha,* 353 Ill. 52.) Allowing due advantage to the defendant under the State's motion, we take the feeble-mindedness to be of the character defined by the statute which is only slightly different from insanity. (*People* v. *Varecha.*) We presume also that the feeble-mindedness existed at the time of the trial, (*People* v. *Varecha,*) which was about 3 years after the decree. Because we infer that the feeble-mindedness of defendant was of the character that rendered him incapable of managing himself and his affairs, [Citation,] the same general rules, applicable to an insane person, apply to him. (*People* v. *Varecha.*) We must accordingly assume that had the fact appeared at the trial, it would have precluded the defendant's conviction. [Citation.] This brings us to the conclusion that the petition made out a *prima facie* case for the relief prayed."

Respondent insists, however, that the *Varecha case* recognizes that the question of the feeble-mindedness of Willis was an issue of fact, not of law, and that the prior adjudication was evidence raising a rebuttable presumption of fact but not conclusive as depriving the circuit court of Morgan County of jurisdiction. Respondent's position is correct to the extent that it analyzes the *Varecha case* as not holding the mere fact of a prior adjudication of feeble-mindedness defeats the jurisdiction of the criminal court of Cook County, or, as here, a circuit court, of an indictment for a criminal offense by the person so adjudged. Here, however, the record before us affirmatively discloses that the rebuttable presumption of fact, namely, feeble-mindedness, was not overcome and, in consequence, the circuit court of Morgan County should not have proceeded to try Willis upon the indictments charging him with murder. Respondent's return contains the report of the com-

mission appointed to inquire into the mental incompetency of Willis. Also included is the report of the State criminologist upon the mental condition of Willis. A return to a writ of *habeas corpus* requires no supporting evidence, but imports verity until impeached. (*People ex rel. Day* v. *Lewis,* 376 Ill. 509.) The traverse of the petitioner in the present case amounted to a demurrer to the return. The trial judge first accepted the pleas of guilty by Willis without making any inquiry into his mental condition. After inquiries were made, defendant was again arraigned and, apparently, new pleas of guilty were interposed to the indictments. Far from showing that the presumption of mental defectiveness had been overcome, the reports tend rather to confirm the finding of feeble-mindedness made approximately one year earlier. It cannot be said upon the record made that the trial judge was unaware of the mental condition of the accused. It is true, of course, that the opinion of this court in *People* v. *Varecha,* 353 Ill. 52, was not filed until June 22, 1933, two months and eight days after the judgments of conviction had been rendered by the circuit court of Morgan County against Willis and, hence, the trial judge did not have the benefit of this far-reaching decision at the time he accepted Willis's pleas of guilty and sentenced him to imprisonment in the penitentiary. The question of mental competency of Willis should have been determined before proceeding further.

Our attention is directed to a recent decision of the Circuit Court of Appeals for the Seventh Circuit, *United States ex rel. Lester A. Samman, Incompetent, by Milton M. Ruben, Guardian,* v. *Ragen,* 167 Fed. 2d 543. Samman appealed from the denial of his application for discharge on a writ of *habeas corpus.* It appears that he is held in the custody of the warden for violation of a parole from a sentence in 1931 for armed robbery and a second sentence for armed robbery following his conviction therefor in 1945. The single question presented by the petition

and the appeal was whether the fact that Samman had been adjudicated insane by a court in California, committed to an asylum in 1931 and never thereafter legally restored to sanity, *ipso facto* rendered the subsequent convictions and sentences by the Illinois courts null and void, entitling Samman to release from the warden's custody. Samman was represented by counsel in both criminal proceedings. The Circuit Court of Appeals points out it did not appear that the fact of his adjudication of insanity was called to the attention of the trial court at any time during the 1931 proceedings, and that it was not called to its attention until after a plea of guilty and discharge of the jury in 1945, during the course of a hearing in mitigation, in which Samman testified at length as to his earlier history. Samman contended that the sole question was whether he, after having been adjudged insane by a court of competent jurisdiction in 1931, could enter his plea of guilty to an indictment charging him with a crime until the issue of whether he was restored to sanity or continued insane was determined in some manner prescribed by the statutes of this State. Answering, the court said, "We cannot agree with appellant as to the binding and conclusive effect of an adjudication of insanity. We have found no case, even at common law, holding that an adjudication of insanity in some other court, at some earlier time, could be set up by collateral proceeding where the earlier adjudication was not even called to the attention of the court. Nor do we find any case where such a prior adjudication was relied upon as conclusive proof of insanity either as of the time of the commission of the crime or of the trial thereof. In fact, the rule appears to be that a prior adjudication is only *prima facie,* and not conclusive evidence of criminal irresponsibility."

The quotation from the opinion of the Federal Circuit Court of Appeals is in accord with the principles announced by this court in *People* v. *Varecha,* and followed in the

present case. The prior adjudication that Willis was feeble-minded was *prima facie* rather than conclusive evidence of criminal irresponsibility. The record discloses, however, that the *prima facie* evidence of feeble-mindedness was not rebutted in the present case.

Numerous decisions state another familiar rule that the duty and responsibility of raising the question of sanity or insanity of a person charged with crime rests upon the accused and his counsel. (*People* v. *Haupris,* 396 Ill. 208; *People* v. *Wagner,* 390 Ill. 384.) In *People* v. *Bacon,* 293 Ill. 210, the court said, "it has long been the law in this State that every man is presumed to be sane until the contrary is shown." Here, the contrary was shown.

The fact that the power of the trial court to render the judgments of conviction was not attacked in the first instance is immaterial. In entering the judgments, the circuit court of Morgan County exceeded its jurisdiction. Where a court, after acquiring jurisdiction of the subject matter, as here, transcends the limits of the jurisdiction conferred, its judgment is void. (*People ex rel Prince* v. *Graber,* 397 Ill. 522; *Ward* v. *Sampson,* 395 Ill. 353; *Flake* v. *Pretzel,* 381 Ill. 498; *Thayer* v. *Village of Downers Grove,* 369 Ill. 334.) In *Armstrong* v. *Obucino,* 300 Ill. 140, this court said, "The statement has very frequently been made that where a court has jurisdiction of the parties and subject matter, its decree, however erroneous, can only be attacked on appeal or error; but the rule is subject to an exception equally well settled,—that a decree may be void because the court has exceeded its jurisdiction. * * * Courts are limited in the extent and character of their judgments, and if they transcend their lawful powers their judgments and decrees are void and may be collaterally impeached wherever rights claimed under them are brought in question. The doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment or decree, how-

ever erroneous, cannot be collaterally assailed, is only correct when the court proceeds according to the established modes governing the class to which the case belongs and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it." The challenged judgments of the circuit court of Morgan County entered on April 14, 1933, are void.

When Willis was tried for murder in 1933, the legal presumption obtained that he was still feeble-minded or mentally incompetent, as previously adjudged to be the fact on April 8, 1932. The presumption, not having been disproved, continued. The mental incompetency of Willis was of a permanent type or of a continuing nature. A relatively short period of time elapsed between the day he was proved mentally incompetent and the day, less than a year later, when the two crimes of murder charged against him were perpetrated. Authority to proceed further in the circuit court was wanting, the subsequent proceedings were nullities, and the judgments rendered against Willis were without a legal basis. Except for the fact that the prisoner here has been adjudicated a feeble-minded person by an order of the county court of Jersey County which, so far as we are advised, is still subsisting, Willis would be ordered released from the custody of the respondent, the warden of the Illinois State Penitentiary at Menard, without qualification. Not only must the rights, constitutional and otherwise, of persons accused of crime, and persons convicted and incarcerated for committing criminal offenses, be zealously protected, but the rights of the public at large are entitled to consideration and protection. The general public enjoys the unquestioned right to be guarded against release of a feeble-minded or insane prisoner from the penitentiary. It may be that Willis is now as mentally incompetent as when originally declared a feeble-minded or insane person. We would be derelict in our duty to the people of this State if we ordered the release

of Willis without taking reasonably necessary steps to avoid a repetition of the tragedy occasioned by him being at large on December 28, 1932, so shortly after having been ordered committed to the Lincoln State School and Colony.

The respondent, the warden of the Illinois State Penitentiary at Menard, is directed to release the petitioner, Charles Stewart Willis, from his custody and to deliver him to the sheriff of Morgan County who, in turn, is directed to deliver Willis to the proper authorities for recommitment under the order of the county court of Jersey County of April 8, 1932, in conformity with the law. The circuit court of Morgan County will proceed generally in accordance with the views expressed in this opinion.

*Petitioner remanded to custody of sheriff, with directions.*