(No. 31084.—■

THE PEOPLE *ex rel.* Charles Miller, on behalf of Peter Miller, Petitioner, *v.* BROWNING ROBINSON, Warden, Respondent.

*Opinion filed November 22, 1949.*

CHARLES MILLER, relator, *pro se.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WAYNE R. COOK, of Danville, of counsel,) for respondent.

Mr. JUSTICE GUNN delivered the opinion of the court:

By an original petition for a writ of *habeas corpus* filed in this court against Browning Robinson, Warden of the Illinois State Penitentiary at Menard, Charlie Miller seeks to obtain the discharge of his son, Peter Miller, from the penitentiary. The writ issued, the Warden made a return, and the cause is submitted upon the record thus made.

The record discloses that, on March 18, 1948, Peter Miller was arrested in Mound City for acting in an insane manner. On March 20, 1948, the county court of Pulaski County entered an emergency order finding that Miller's welfare and that of the general public required his admission to a mental hospital under emergency procedure and committed him to the Southern Illinois State Hospital at Anna, conformably to the provisions of section 5-1 of the Revised Mental Health Act. (Ill. Rev. Stat. 1947, chap. 91½, par. 5-1.) Three days later, on March 23, 1948, without having been classified by the hospital authorities, Miller was released, as unimproved, into the custody of an officer of the U. S. Army military police detachment at St. Louis, Missouri. Upon leaving the hospital, Miller was placed under arrest by the sheriff of Johnson County and, after communicating with his superior officers, the military police officer surrendered his prisoner to the sheriff.

On April 3, 1948, the grand jury of Johnson County returned an indictment charging Miller with having committed a robbery on March 18, 1948. He was arraigned on the same day, and counsel was appointed to represent him. Upon a plea of guilty, he was convicted of robbery and sentenced to imprisonment in the penitentiary for a term of from five to ten years, which sentence he is now serving. The circuit court of Johnson County did not conduct a hearing or make any finding with respect to Miller's mental condition. Nor were any further proceedings or orders entered in the county court of Pulaski County relating to Miller subsequent to the emergency order of March 20, 1948.

The present proceeding is brought under section 22 of the Habeas Corpus Act, (Ill. Rev. Stat. 1947, chap. 65, par. 22,) which, so far as relevant, provides: "If it appear that the prisoner is in custody by virtue of process from any court legally constituted, he can be discharged only for

some of the following causes: 1. Where the court has exceeeded the limit of its jurisdiction, either as to the matter, place, sum or person." The precise relief sought is the discharge of Miller from the penitentiary and his return to the Southern Illinois State Hospital at Anna. Based on the allegation that Miller was adjudged a mentally ill person by the county court of Pulaski County on March 20, 1948, the contention is made that, by reason of Miller's prior adjudication and commitment to a mental hospital, the circuit court of Johnson County had no jurisdiction over Miller on April 3, 1948, and, in consequence, the judgment of conviction is void.

While *People* v. *Varecha,* 353 Ill. 52 (writ of error,) *People* v. *Maynard,* 347 Ill. 422 (writ of error), and *Jablonski* v. *People,* 330 Ill. App. 422 (*coram nobis,*) are cited in support of the contention urged, principal reliance is placed on *People ex rel. Wiseman on behalf of Willis* v. *Nierstheimer,* 401 Ill. 260, an original *habeas corpus* proceeding brought in this court. In the case last cited, Willis, within one year prior to his conviction of murder upon a plea of guilty, had been adjudged a feeble-minded person, and the court adjudging him feeble-minded retained jurisdiction of his person. Evidence adduced in the circuit court of Morgan County upon the trial disclosed that the mental incompetency was of a permanent type or of a continuing nature. The trial judge appointed a commission of competent physicians to inquire into the mental condition and intelligence of Willis. The State criminologist also made a report upon his mental condition. It could not be said upon the record made that the trial judge was unaware of the mental condition of the accused. Under these circumstances, the court receiving Willis's plea of guilty of murder did not have jurisdiction of his person for the adequate reason that the presumption of feeble-mindedness or mental incompetence was not disproved when the plea of guilty

was entered. In the *habeas corpus* proceeding, the feeble-mindedness of Willis was shown to have been of a continuous nature at the time he was convicted of murder. Accordingly, the judgment of conviction was void. The facts in the *Willis case* are far from parallel with the present factual situation and afford little, if any, aid to Miller.

For an adjudication of Miller's insanity, reliance is placed solely on the emergency order entered by the county court of Pulaski County on March 20, 1948. This order specifically recites that it was entered "in accordance with the terms and provisions of said section 5-1 of the Revised Mental Health Act." Section 5-1 of the applicable statute provides that, upon the verified petition of a reputable citizen alleging that a named person is mentally ill or in need of mental treatment, "which petition shall also allege that such person * * * is in such condition of mind or body as to render his remaining at large dangerous to himself or others, and that an emergency admission to a hospital for the mentally ill is necessary for the protection of the alleged mentally ill person or others from his violence, which petition shall be accompanied by the certificate of a duly qualified physician * * * certifying as to the existence of such alleged conditions, such alleged mentally ill person * * * may be admitted to or detained in a hospital for the mentally ill for a reasonable length of time, * * * not in any event to exceed 15 days, pending judicial inquiry as to the mental condition or need for mental treatment of such person. The certificate of the physician * * * together with said verified petition shall be presented to the superintendent of the hospital to which admission is sought, with the person alleged to be mentally ill or in need of mental treatment * * *. Such petition and certificate shall be the authority of the superintendent for the detention of the person alleged to be mentally ill * * *. Provided, however, that the petition and certificate * * * may be presented to the County Judge

* * * and if such Judge is satisfied that the welfare of the patient or of the general public requires it such Judge may order that a writ issue directing that the sheriff of the county * * * take charge of such patient and transport him to a hospital for the treatment of mentally ill persons, * * * and there deliver the patient to the superintendent of such hospital * * *." Ill. Rev. Stat. 1947, chap. 91½, par. 5-1.

Manifestly, section 5-1 does not authorize an adjudication of mental illness but simply provides for the emergency admission of an alleged mentally ill person to a mental hospital and his temporary detention there, not to exceed fifteen days, pending a judicial inquiry as to his mental condition, upon a petition alleging mental illness and a physician's certificate, either with or without a court order. Far from determining that Miller was a mentally ill person, in accordance with the procedures set forth elsewhere in the Revised Mental Health Act, (Ill. Rev. Stat. 1947, chap. 91½, pars. 6-1 to 6-13,) the county court merely found that "the welfare of the said person or of the general public requires that he be admitted to some hospital for the treatment of mentally ill persons upon emergency procedure" and committed him "to the Superintendent of the Southern Illinois Hospital, located at Anna, Illinois, in accordance with the terms and provisions of said Section 5-1 of the Revised Mental Health Act." This does not constitute an adjudication of mental illness. Consequently, the contention that Miller had been adjudged insane by the county court prior to his trial in the circuit court must fail.

The duty and responsibility of raising the question of insanity upon the trial in the circuit court rested upon Miller, and his counsel, (*People* v. *Wagner*, 390 Ill. 384; *People* v. *Hart*, 333 Ill. 169,) and, in the absence of any evidence to the contrary, the presumption of sanity obtained. (*People* v. *Christensen*, 336 Ill. 251; *People* v.

*Bacon,* 293 Ill. 210.) If Miller was, in fact, insane at the time he entered his plea of guilty and this circumstance was unknown to the trial judge, his remedy lies in a motion in the nature of a writ of error *coram nobis.* (*Schroers* v. *People,* 399 Ill. 428.) There being no proof of a prior adjudication of insanity, the circuit court of Johnson County had jurisdiction over Miller, and the judgment of conviction, entered on a plea of guilty, and the sentence of imprisonment in the penitentiary, pursuant to which the Warden now holds Miller, are not subject to the attack made in the present proceeding.

Peter Miller, on whose behalf the petition for *habeas corpus* was filed, is remanded to the custody of the warden.

*Prisoner remanded.*